**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WILLIAM C. MARTIN,**

      **Petitioner,**

      **v.**

**ERNIE MOORE, WARDEN
LEBANON CORRECTIONAL
INSTITUTION,**

      **Respondent.**

      **CASE NO. 2:12-CV-878
JUDGE GEORGE C. SMITH
MAGISTRATE JUDGE ABEL**

## REPORT AND RECOMMENDATION

Petitioner William C. Martin, a state prisoner, brings the action for a writ of habeas corpus under 28 U.S.C. §2254.  This matter is before the Magistrate Judge on the petition, Respondent's *Return of Writ,* and the exhibits of the parties.  This case involves Martin's convictions after a jury trial on two counts of rape, one count of kidnapping, and one count of felonious assault.  The Ohio Tenth District Court of Appeals affirmed Petitioner's convictions and sentence, and the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  Petitioner attempted to file an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, the appellate court dismissed his application for failure to file a sworn statement in support, and the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  The petition alleges that Martin also filed a postconviction proceedings in the state trial court.  The record before this Court does not reveal whether the trial court has ever ruled on that action.  For the reasons that follow, the Magistrate Judge concludes that all of Petitioner's claims are without merit or procedurally defaulted, and therefore **RECOMMENDS** that this action be **DISMISS-ED.**

**Facts and Procedural History:**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case as follows:

> The following is a recitation of the facts relative to appellant's convictions, which were adduced at trial. Appellant met A.C., the victim, in 2008, when she was retrieving some of her belongings from a friend that lived in appellant's apartment complex. Appellant introduced himself to appellant and asked for her phone number. A.C. refused to give appellant her phone number, but he subsequently acquired the same from A.C.'s daughter and began to call her.

> A.C. testified that she initially did not take or return appellant's calls, but began doing so because, if she did not, appellant would repeatedly call her. A.C. testified that on one occasion, she had 141 missed calls from appellant in a 15-minute interval. A.C. knew that appellant wanted a romantic relationship but testified that she made it clear to appellant that she was not interested in him in that way. Eventually, A.C. broke off contact with appellant in late 2008 because he would not take no for an answer.

> The two, however, were in contact again in 2009. In early February, police were called following an altercation between A.C. and appellant. According to A.C., she had just left the Hard Road Café and was walking down Hard Road when appellant approached her and then began to grab at her and drag her towards his apartment complex. A slight physical altercation ensued, leaving A.C. with no apparent injuries but left appellant with a bloody lip. No arrests were made as a result of this incident.

> On February 18, 2009, the date of the incident, A.C. had spoken to appellant on the phone and disclosed that she would be going to a bar with one of her girlfriends later that day. While A.C. was at the bar, appellant showed up. The group drank beer and played pool. A.C. testified that, as they were leaving, appellant asked A.C. to give him a ride home and offered her $20 for gas.

> A.C. drove appellant to his apartment, where she went inside to use the bathroom and get the money offered to her. As she left the bathroom, A.C. testified that appellant punched her in the face and cursed at her. He then forced her to the floor and began to pull her clothes off. A.C. struggled with appellant and tried to keep him from ripping her clothes off but was unsuccessful. A.C. testified

2

that, for the next four hours, appellant forced her to submit to vaginal and anal intercourse and also penetrated her vagina with his tongue. During this time, appellant also repeatedly struck A.C., choked her, threatened and jabbed her with a butter knife, and also told A.C. that he was going to kill her. A.C. also testified that appellant had spilt her lip open, which caused bleeding, and that throughout the attack, appellant kept making her wash the blood off her face.

A.C. attempted to escape several times but was finally successful when appellant went to make a phone call to call in sick to work. While appellant was on the phone, A.C. broke free, pulled on her shirt and jeans, and ran out the door. A.C. knocked on several doors in the complex seeking assistance, one of which was the apartment of Tracy Becknell.

Ms. Becknell testified that she heard A.C. yelling, "Help, help me, somebody please help me. He is coming after me. Somebody please let me in. Help me." (Tr. 93.) Ms. Becknell described A.C.'s screaming as "bone-chilling" and described A.C. as being "terrified." (Tr. 93.) Although scared to open her door, Ms. Becknell listened to her conscience and did so. When she opened her door, Ms. Becknell stated that A.C. had a black eye, was carrying her bra, did not have any shoes on, and appeared to be "very scared." (Tr. 94.) Ms. Becknell called 911 and told the operator that she had just let someone into her apartment that had been raped.

Police and emergency personnel responded within ten minutes. Officer Jonathon Hall, a 15-year veteran with the Columbus Division of Police, testified that A.C. appeared to be "very hysterical" and "very visibly upset." (Tr. 104.) A.C., despite her hysteria, was able to communicate to Officer Hall that she had been raped. Officer Hall described A.C. as "disheveled," had sustained bruising to her face, and was in a state of high agitation. (Tr. 107.)

Paramedic Robert Dickson was present at the scene. Mr. Dickson testified that A.C. had injuries to the left side of her face and that she complained of pain to the left side of her jaw, numbness on her left side, blurred vision in her left eye, loss of hearing in her left ear, rectal pain, and neck and back pain. Mr. Dickson described A.C. as anxious and fearful. Mr. Dickson placed A .C. in a cervical collar and, after placing her on a backboard transported her to Riverside Methodist Hospital ("Riverside").

Janet Baatz, a registered nurse and sexual assault nurse examiner, conducted an examination of A.C. upon her arrival. Ms. Baatz noted that A.C. had bruises "all over" her head and face, and a "marking on her neck like she was strangled." (Tr. 127.) A.C. cried throughout her interview with Ms. Baatz, during which she told Ms. Baatz that there had been penetration to her vagina and rectum, although appellant did not ejaculate, and that appellant had used his mouth all over her body. Ms. Baatz testified that A.C.'s injuries were consistent with the history she provided. Ms. Baatz explained that there were abrasions and bruising on A.C.'s posterior fourchette, and that this injury was indicative of the use of force.

A CAT scan was performed on A.C. and revealed that she suffered a subdural hematoma. Dr. Joseph McElderly, who treated A.C. at Riverside, testified that a subdural hematoma is caused by blunt force trauma to the head that lacerated blood vessels in the brain. Because the injury can be life threatening, A.C. was admitted to the neurology intensive care unit.

Sergeant Eric David, a 15-year veteran with the Columbus Division of Police, testified that he was dispatched to the apartment complex. Once there, he proceeded to appellant's apartment and pounded at the door. No one answered, despite repeated pounds on the door and the announcement of police presence, but Sergeant David heard some shuffling inside. At that point, Sergeant David forced entry into appellant's apartment. Sergeant David explained that, with the crime alleged, he had a fear about the destruction of evidence. Upon entry, Sergeant David found appellant lying facedown, approximately five to six feet in front of the door, next to a couch. Officers immediately went to restrain appellant, who, Sergeant David testified, acted as if he had just been woken up. Inside, Sergeant David noted that A.C.'s shoes and broken pieces of a cell phone were present in the apartment.

Detective Amy Welsh attempted to question appellant after his arrest, but appellant was not cooperative. Appellant would not sign a verification that Detective Welsh had read him his Miranda rights, nor would he answer any questions. At the point Detective Welsh indicated that the interview was over, however, appellant began "yelling profanities and racial slurs" at Detective Welsh. (Tr. 235.) He told Detective Welsh that she was "nothing but a white bitch, and that he was only in there [jail] because his girlfriend was white and he was a nigger, and that is the only reason why we were in there and that was the only reason why he was investigated." (Tr. 235.)

4

Appellant testified at trial and gave a different version of the events. According to appellant, he and A.C. were involved in a romantic relationship and that A.C. frequently would spend the night at his apartment. Appellant testified that on the day of the incident, he and A.C. had gone to several bars, one right after the other, the last of which was Spoonz. They left Spoonz and proceeded to appellant's apartment, arriving at about 9:00 p.m. Once inside the apartment, appellant stated that he felt sick and vomited. A.C. was on the couch texting someone. While she was texting, appellant went to the laundry room to put the shirt in the washer because he had vomited on himself. Appellant testified that, when he got back to the apartment, A.C. had stepped out and left her phone on the heater so appellant picked it up. Appellant testified that A .C. returned to the apartment with a cigar so that she could roll a blunt and went to retrieve a knife to cut the cigar for the blunt.

Appellant stated that he then placed a call to his boss to call in sick. A.C. became angry and wanted to know who appellant was talking to on the phone. A.C. then snatched the phone from his hand and threw it against the wall. The two proceeded to argue, and A.C. demanded her phone back from appellant. Appellant testified that he told A.C. he was not going to give her phone back to her, which prompted A.C. to slash appellant in the arm with the knife she had been using to make the blunt. Appellant claimed he then grabbed A.C. by the arm, grabbed the knife, and "rushed her to the floor." (Tr. 368.) The two then "tussled for a little bit," after which appellant picked A.C. up and "threw her out of [his] home." (Tr. 368.) In response to further questioning, appellant denied having raped and strangled A.C. and could not explain A.C.'s other injuries.

The case was submitted to a jury, which found appellant guilty of all counts. The trial court sentenced appellant to: ten years on each count of the rape counts, to be served consecutively, ten years on the kidnapping count, to be served concurrent to the rape counts, and eight years on the felonious assault count, to be served consecutive to the rape counts, for a total sentence of 28 years of incarceration.

Appellant filed a timely appeal, asserting the following three assignments of error for our review:

> I. THE TRIAL COURT ERRED AND DEPRIVED
> APPELLANT OF DUE PROCESS OF LAW AS

GUARANTEED BY THE FOURTEENTH AM-
ENDMENT TO THE UNITED STATES CON-
STITUTION AND ARTICLE ONE SECTION
TEN OF THE OHIO CONSTITUTION BY FIND-
ING HIM GUILTY OF RAPE, KIDNAPPING
AND FELONIOUS ASSAULT AS THOSE VER-
DICTS WERE NOT SUPPORTED BY SUFFIC-
IENT EVIDENCE AND WERE ALSO AGAINST
THE MANIFEST WEIGHT OF THE EVIDENCE.

II. APPELLANT WAS DEPRIVED OF HIS
RIGHT TO BE PRESENT AND TO THE PRES-
ENCE AND ASSISTANCE OF HIS COUNSEL
DURING A CRITICAL STAGE OF HIS JURY
TRIAL, AND HIS RIGHT TO DUE PROCESS
AND A FUNDAMENTALLY FAIR JURY TRIAL
AS REQUIRED BY THE FIFTH, SIXTH AND
FOURTEENTH AMENDMENTS TO THE UNIT-
ED STATES CONSTITUTION AND ARTICLE
ONE SECTIONS FIVE, TEN AND SIXTEEN OF
THE OHIO CONSTITUTION AND CRIMINAL
RULE 43(A).

III. THE TRIAL COURT ERRED BY IMPOSING
CONSECUTIVE     SENTENCES     WITHOUT
MAKING THE REQUISITE FACTUAL FIND-
INGS; THEREBY DEPRIVING APPELLANT OF
DUE PROCESS OF LAW AS GUARANTEED BY
THE FOURTEENTH AMENDMENT TO THE
UNITED STATES CONSTITUTION AND ART-
ICLE ONE SECTION SIXTEEN OF THE OHIO
CONSTITUTION.

*State v. Martin*, No. 10AP-295, 2010 WL 4968638, at *1-4 (Ohio 10th App. Dist. Dec. 7, 2010).

On December 7. 2010. The appellate court affirmed the trial court's judgment. *Id.*  Petitioner did

not timely appeal to the Ohio Supreme Court; however, on April 20, 2011, the Ohio

Supreme Court granted his motion for a delayed appeal.  *State v. Martin*, 128 Ohio St.3d 1457

(2011).  On September 21, 2011, the Ohio Supreme Court dismissed the appeal.  *State v. Martin*,

129 Ohio St.3d 1474 (2011).

Petitioner also pursued postconviction relief.  On November 9, 2010, he filed a post-conviction action in the trial court, in which he asserted he was denied effective assistance of counsel.  *Exhibit 15 to Return of Writ*.  Respondent indicates that it does not appear that the trial court ever ruled on this motion.  *Return of Writ,* PageID #91.[1]

On March 7, 2011, Petitioner also filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  He asserted that he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal the following claims:

> 1. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN TRIAL COUNSEL FAILED TO OBJECT TO PROSECUTION MISCONDUCT, INFLAMATORY REMARKS, LIES ALSO TRIAL COUNSELS (sic) REMARKS AND [illegible] TO HAVE EXPERT D.N.A. TESTING DONE AND NOT TO LET APPELLANT BE AT ALL STAGES OF HIS TRIAL.
>
> 2. APPELLANT (sic) COUNSEL WAS INEFFECTIVE FOR NOT RAISING THE ISSUE OF INEFFECTIVE TRIAL COUNSEL TELLING THE JURY TO FIND APPELLANT GUILTY FOR FELONIOUS ASSAULT AND NOT TESTING OR HAVING D.N.A. EXPERT TEST THE DNA ON THE CLOTHING AND KNIFE AND HAVING APPELLANT PRESENCE AT A CRITICAL STAGE OF TRIAL DENYING APPELLANT (sic) OF 5TH, 8TH AND 14TH AMENDMENT.
>
> 3. APPELLANT (sic) COUNSEL WAS INEFFECTIVE FOR NOT RAISING ISSUE OF PROSECUTING ATTORNEY'S REMARKS DURING OPENING STATEMENT, AND FURTHER LIEING CLOSING ARGUMENT (sic) CONSTITUTED PROSECUTORIAL MISCONDUCT WHICH DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

---

[1] Petitioner did not raise, in the postconviction proceedings, any of the same claims he raises herein.  *See Exhibit 15 to Return of Writ.*

> 4. APPELLANT (sic) COUNSEL WAS INEFFECTIVE FOR
> NOT RAISING THE ISSUE OF ABUSE OF DISCRETION BY
> COURT FOR ALLOWING EXPERT WITNESS TESTIMONY.

*Exhibit 17 to Return of Writ*. On June 28, 2011, the appellate court denied Petitioner's Rule

26(B) application for failing to file a sworn statement as required under Ohio Appellate Rule

26(B)(2)(d). *Exhibit 20 to Return of Writ*. The appellate court denied Petitioner's motions for

reconsideration of that decision. *Exhibits 22, 25 to Return of Writ*. On September 5, 2012, the

Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Martin*, 132 Ohio St.3d

1517 (2012).

On September 25, 2012, Petitioner filed the instant *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in

violation of the Constitution of the United States based upon the following grounds:

> 1. The trial court erred and deprived appellant of due process of
> law as guaranteed by the 14th Amendment to the U.S.
> Constitution and Article I Section 10 of the Ohio Constitution
> by finding him guilty of rape, kidnapping and felonious assault
> as these verdicts were not supported by sufficient evidence and
> were against the manifest weight of the evidence.
>
> 2. Appellant was deprived of his right to be "present" and to the
> presence and assistance of his counsel during a "critical" stage
> of his jury trial and his right to due process and a funda-
> mentally fair jury trial as required to by the 5th and 14th
> Amendment to the United States Constitution and Article I
> Section 5, 8, 16 of the Ohio Constitution and Criminal Rule
> 43(A).
>
> 3. The trial court erred by imposing consecutive sentences
> without making the requisite factual findings thereby depriving
> appellant of due process of law as guaranteed by the 14th
> Amendment to the U.S. Constitution and Article 1.16 of the
> Ohio Constitution and the 5th Amendment to the U.S.
> Constitution.

4.  Ineffective assistance of counsel in violation of 5th, 6th and 14th Amendment.

5.  Abuse of discretion which deprived appellant of a fair trial in violation of the 5th, 6th and 14th Amendment.

6.  Detective misconduct which deprived appellant of a fair trial of the 14th Amendment to the United States Constitution and comparable of the Ohio Constitution.

7.  Prosecutorial misconduct which deprived appellant of a fair trial in violation of the 14th Amendment to the United States Constitution and comparable provision of the Ohio Constitution.

8.  Appellant was deprived the effective assistance of appeals counsel on his direct appeal as guaranteed by the 5th and 6th Amendment to the United States Constitution.  Appellant did file a 26(B) on his appeals counsel for not properly presenting the assignment of error that contained merits that would have ensured that appellant's conviction would have been reversed on his direct appeal.  1) Ineffective assistance of trial counsel for asking the jury to find appellant guilty in opening and closing arguments of felonious assault of a weapon.

It is the position of the Respondent that Petitioner's clams One and Four through Eight are procedurally defaulted or without merit.

**Claim One:**

In claims one and two, Petitioner asserts that the evidence was constitutionally insufficient to support his convictions.

Respondent contends that Petitioner procedurally defaulted this claim by failing to timely appeal to the Ohio Supreme Court; however, the Ohio Supreme Court granted Petitioner's motion for a delayed appeal.  Consequently, petitioner has not fairly presented history federal constitutional claims to the Ohio courts, and this court cannot now consider those claims in

habeas corpus.  Nonetheless, even if petitioner had fairly presented the claim to the Ohio courts, it plainly lacks merit.

The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Specifically, appellant attacks A.C.'s credibility, asserting that she gave inconsistent and unbelievable testimony.
>
> ***
>
> The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency of the evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
>
> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
>
> Whether the evidence is legally sufficient is a question of law, not fact. *Thompkins* at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001-Ohio-4; Jenks at 273.
>
> The jury convicted defendant of kidnapping, rape, and felonious assault. As to kidnapping, R.C. 2905.01 provides that "[n]o person by force, threat, or deception * * * shall remove another from the

place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter [or][t]o engage in sexual activity * * * with the victim against the victim's will." R.C. 2907.02(A)(2) proscribes rape and provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Vaginal intercourse is a form of sexual conduct. R.C. 2907.01(A). Regarding felonious assault, R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another or another's unborn."

The basis for appellant's assigned error is that A.C .'s testimony is not credible. To that end, we note that we do not weigh credibility when considering an insufficiency of the evidence argument. Rather, the test is whether the evidence viewed in a light most favorable to the prosecution, if believed, would convince a rational trier of fact that appellant was guilty of kidnapping A.C., raping her, and assaulting her. In this case, A.C. testified that appellant raped and assaulted her over a four-hour period of time. She testified that appellant forced her to submit to vaginal and anal intercourse and that his mouth made contact to her genital area. A.C. also testified that appellant punched her in the face and strangled her.

From this evidence, a reasonable trier of fact could have found the elements of kidnapping, rape, and felonious assault were satisfied beyond a reasonable doubt. Therefore, we find appellant's convictions are supported by sufficient evidence.

\*\*\*

A.C. gave inconsistent testimony . . .[A]ppellant contends that A.C. characterized appellant as a stalker but also testified that he was her friend. Appellant also points to A.C.'s testimony in which she stated that appellant held her against her will for hours and that he inflicted injuries upon her that caused her to bleed, but no blood was located in the apartment by the police during their investigation. These discrepancies, however, do not render A.C.'s testimony not credible as a matter of law. . . .

[T]he jury considered these inconsistencies in evaluating A.C.'s credibility. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, in determining the witnesses' credibility. *Columbus v. Dials,* 10th Dist. No. 04AP-1099, 2005-Ohio-6305, ¶ 73; see also

> *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58.
> The jury obviously chose to believe A.C.'s version of events, and
> we will not substitute our judgment for that of the trier of fact.
> *State v. Day*, 10th Dist. No. 04AP-332, 2005-Ohio359, ¶ 17-19.
>
> Moreover, A.C.'s testimony was largely consistent. In addition,
> Ms. Baatz testified that A.C.'s injuries were consistent with the
> history that A.C. had provided and that the abrasions and bruising
> on A.C.'s posterior fourchette was indicative of the use of force
> during intercourse. This is not the exceptional case in which the
> evidence weighs heavily against the convictions.
>
> Based on the foregoing, appellant's convictions are supported by
> sufficient evidence[.]

*State v. Martin*, 2010 WL 4968638, at *4-7.

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear and convincing
> evidence.

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state

court's decision was contrary to or an unreasonable application of clearly established federal law,

or based on an unreasonable determination of the facts in light of the evidence that was

presented.

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In order to obtain habeas corpus relief, a petitioner must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, -- U.S. -- , 132 S.Ct. 26, 2011 WL 5299458, at *1 (Nov. 7, 2011) (quoting *Harrington v. Richter*, 562 U.S.-- --, 131 S.Ct. 770, 786–87 (2011)). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Petitioner has failed to meet this standard here.

Petitioner's claim that his convictions are against the manifest weight of the evidence fails to present an issue appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence

13

claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31(1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner does assert that the evidence was constitutionally insufficient to sustain his conviction. Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. ta 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id*. (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson,* at 326). For the reasons discussed by the state appellate court, this Court

likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia*, the evidence was constitutionally sufficient to sustain petitioner's conviction.

Under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir.2009). This is a substantial hurdle for a habeas petitioner to overcome, and for the reasons discussed by the state appellate court, Petitioner has failed to do so here.

Claim one is without merit.

**Claim Two:**

In claim two, Petitioner asserts he was denied a fair trial and his right to be present during a critical stage of the proceedings, when the jury asked questions during deliberations.  Again, Respondent argues that Petitioner procedurally defaulted this claim by failing to timely appeal to the Ohio Supreme Court.  For the reasons previously discussed, this Court is not so persuaded.

The state appellate court rejected Petitioner's claim in relevant part as follows:

[A]ppellant claims that his constitutional rights were violated when he was not present for two critical proceedings during jury deliberations. Both proceedings involve questions sent by the jury to the judge during deliberations. One question asked, "Can jury be hung on half the charges and not the other half of the charges?" The trial transcript indicates the word "yes" was written on the question and sent back to the jury but, according to appellant, does not indicate who wrote the answer or whether counsel was present. The second question asked, "Does Count 2 require mouth contact to vagina only or can it include mouth to other parts of body?" The trial transcript is silent as to the content of the answer and whether counsel was present when the court answered the question. Regarding both questions, appellant asserts that he was not present when the questions were sent to the judge by the jury, nor when the questions were answered.

"[A] defendant 'has a fundamental right to be present at all critical stages of his criminal trial.' * * * However, the right to be present is not absolute. * * * Therefore, even if a defendant should have been present at a stage of the trial, 'errors of constitutional dimension are not ipso facto prejudicial.' * * * Prejudicial error exists only where 'a fair and just hearing [is] thwarted by [defendant's] absence.' * * * " *State v. White*, 82 Ohio St.3d 16, 26, 1998-Ohio-363 (citations omitted).

After the instant appeal was filed, we granted the state's motion for leave to supplement the record, pursuant to App.R. 9(E), with a transcript of a hearing held on July 28, 2010. The purpose of that hearing was to address the trial court's procedure regarding the two jury questions at issue. The state filed the transcript on September 13, 2010.

At the hearing, the trial judge stated that "[i]n every instance, without exception, [he] spoke to both counsel. In every instance, [he] summoned counsel for prosecution and defense to come back to the courtroom so that we could discuss the question." (Hearing Tr. 13.) The judge further stated that each time appellant's counsel waived his presence and all counsel agreed on the answers that were submitted to the jury. With respect to the jury question that asked, "Can jury be hung on half the charges and not the other half of the charges?" the judge stated that he wrote the word "yes" on the question and sent it back to the jury.

Regarding the other question, "Does Count 2 require mouth contact to vagina only or can it include mouth to other parts of body?" the judge explained that, after speaking with counsel, all of whom agreed that the answer should be that the jury should refer back to the jury instructions for the answer, he went into the jury room and advised the jury of the same. The judge also noted that neither counsel for the state nor counsel for appellant objected to the foregoing.

Megan Jewett, the assistant prosecuting attorney that tried the case, also testified at the hearing. Ms. Jewett's recollection was identical to that of the trial judge: she testified that appellant's counsel waived appellant's presence, all counsel agreed on the answers to the jury's questions, and that no party objected to the judge verbally advising the jury that they needed to refer back to the jury instructions to answer the last question.

Appellant's trial counsel, Joseph Edwards, testified at the hearing. Mr. Edwards could not recall whether he specifically waived his client's presence but stated that he did not believe he deviated from his usual practice, which was that he usually did not discuss jury questions with clients, especially since the questions posed by the jury were simple. Mr. Edwards stated that he may have even suggested the answers to the questions and that, although he could not recall whether he agreed to the judge going back to the jury room to advise the jury, he testified that he would have no reason to object to that procedure. Mr. Edwards also testified that he believed the answers submitted to the jury were legally correct.

Based on the foregoing, we find no violation of appellant's fundamental rights. It is well-accepted that counsel may waive a client's presence. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 134. Here, both the trial judge and Ms. Jewett recall that Mr. Edwards waived appellant's presence. Although Mr. Edwards could not recall whether he had specifically waived appellant's presence, Mr. Edwards testified that, given the simple nature of the questions, he did not believe that he would have deviated from his usual practice in this instance. Most significant, perhaps, is that Mr. Edwards did not state that he did not waive appellant's presence. "Moreover, the Supreme Court of Ohio has stated that a trial court's written response to a jury question is not a critical

> stage of the criminal proceeding, and a defendant's constitutional rights are not violated when he is absent during the conference regarding the court's response to the jury questions." *State v. Everette*, 2d Dist. No. 22838, 2009-Ohio-5738, ¶ 15 (internal citations omitted).

> Accordingly, appellant's second assignment of error is overruled.

*State v. Martin*, 2010 WL 4968638, at *7-8.

Again, the findings of a state appellate court are presumed to be correct.  Further, this Court cannot grant federal habeas corpus relief unless the state court's decision was contrary to, or an unreasonable application of federal law, as determined by the United States Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. 2254(d), (e).  Petitioner has failed to meet this standard here.

The United States Court of Appeals for the Sixth Circuit has held that the trial court's issuance of a supplemental jury instruction constitutes a critical stage of the proceedings. *Peoples v. Lafler*, -- F.3d --, 2013 WL 5811601, at *13 (6th Cir. 2013)(citation omitted).  Not every statement to the jury, however, is considered a critical stage instruction.  *Id.*  For example, a trial court's re-reading of the jury instructions already issued does not constitute a critical stage jury instruction. *Id.* (citing *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003)).  Additiolnally, the Constitution does not require the defendant to be present when 'presence would be useless or the benefit but a shadow.'"  *Cathron v. Jones*, 190 F.Supp.2d 990, 1001 (E.D.Mich.2002) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106–07 (1934), overruled on other grounds by *Malloy v. Hogan,* 378 U.S. 1 (1964).

The state appellate court did not unreasonably determine that Petitioner failed to establish any prejudice under the circumstances of this case.  Moreover, the United States Supreme Court has not determined whether the answering of jury questions constitutes a critical stage of the proceedings at which a criminal defendant is constitutionally entitled to be present. Therefore, Petitioner cannot establish that habeas corpus relief is warranted on this claim. *Lopez v. Hernandez*, 2010 WL 2764699, at *7 (N.D.Cal. July 13, 2010) (citing *La Crosse v. Kernan*, 244 F.3d 702, 707–08 (9th Cir. 2001)).

Claim two is without merit.

**Claim Three:**

In claim three, Petitioner asserts that the trial court erred by not making factual findings prior to imposition of consecutive sentences.  The state appellate court rejected this claim as follows:

> [A]ppellant contends the trial court erred in imposing consecutive sentences without making findings in accordance with R.C. 2929.14(E)(4). In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio declared that R.C. 2929.14(E)(4), which directed trial courts to make specified findings of fact before imposing consecutive sentences, was unconstitutional based on the United States Supreme Court's decision in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531. Therefore, in *Foster,* the Supreme Court of Ohio severed R.C. 2929.14(E), resulting in the ability of trial courts to impose consecutive sentences without making any findings of fact. *State v. Houston*, 10th Dist. No. 06AP-662, 2007-Ohio-423.
>
> On appeal, appellant argues the United States Supreme Court's recent decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, effectively overruled *Foster,* resulting in a resurrection of R.C. 2929.14(E). As recently stated by this court in *State v. Nuh*, 10th Dist. No. 10AP-31, 2010-Ohio-4740, "[t]his court,

> acknowledging *Ice*, concluded that because the 'Supreme Court of Ohio has not reconsidered *Foster* * * * the case remains binding on this court.'" *Id*. at ¶ 11, quoting *State v. Franklin*, 182 Ohio App.3d 410, 2009-Ohio-2664, ¶ 18. "Indeed, this court has recognized on several occasions that we are bound to follow *Foster* until the Supreme Court of Ohio directs otherwise." *Id*., citing *State v. Mickens,* 10th Dist. No. 08AP-743, 2009-Ohio-2554, ¶ 33; *State v. Russell*, 10th Dist. No. 09AP-428, 2009-Ohio-6420, ¶ 16; *State v. Crosky*, 10th Dist. No. 09AP-57, 2009-Ohio-4216, ¶ 8; *State v. Potter*, 10th Dist. No. 09AP-580, 2010-Ohio-372, ¶ 8. Accordingly, we find appellant's arguments unpersuasive and overrule his third assignment of error.

*State v. Martin*, 2010 WL 4968638, at *8-9.

"[T]he Supreme Court explicitly held in *Ice* that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment[.]" *Scott v. Warden, Southern Correctional Facility,* No. 1:12-cv-118, 2013 WL 2096641, at *6 (S.D. Ohio May 14, 2013).    The Supreme Court held in Ice that "the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested 'exclusively' with the sentencing judge and. . .  that 'the prevailing practice' of judges has been" imposition of consecutive, rather than concurrent, sentences.  *Id*. (citing *Ice*, 555 U.S. at 168–69).  Therefore, Petitioner's claim raises an issue of state law only that is not appropriate for federal habeas corpus relief.  *Ice*, 555 U.S. at 169–70.

> All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal. To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither *Apprendi [v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),] nor our Sixth Amendment traditions compel straitjacketing the States in that manner.

*Ice*, at 171 (emphasis added).

Claim three is without merit.

**Claims Four through Eight**:

Respondent contends that Petitioner has failed to fairly present claims waived claims Four through Eight to the Ohio courts; and, consequently, those claims cannot be considered in federal habeas corpus.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) ( per curiam ); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If he can no longer present his claims to a state court, he has waived them for federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, the Court considers the following to determine whether a federal habeas claim is precluded due to the Petitioner's failure to observe a state procedural rule: "First, the court must determine that there is a state procedural rule that is applicable to the Petitioner's claim and that the petitioner failed to comply with the rule."  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the Court must determine whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose

review of a federal constitutional claim. *Id*. Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, Petitioner must demonstrate cause for his failure to follow the State's procedural rule as well as actual prejudice from the alleged constitutional error. *Id*.

In claim four, Petitioner asserts he was denied effective assistance of trial counsel.  In claim five, Petitioner asserts he was denied a fair trial because the trial court abused its discretion.  In claim six, Petitioner asserts he was denied a fair trial based on police misconduct. In claim seven, Petitioner asserts he was denied a fair trial due to prosecutorial misconduct. These claims, being readily apparent from the face of the record should have been raised on direct appeal but were not.[2]  Moreover, Petitioner may now no longer do so under Ohio's doctrine of *res judicata. State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v.*

---

[2] Petitioner's trial attorney did not represent him on direct appeal. Consequently, any claims for ineffective assistance of counsel apparent on the face of the record could have been raised on direct appeal. *Cole*, 2 Ohio St. 3d 112, 114 (1982). Any claims depending on facts outside the record should have been presented in postconviction.

*Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998). The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of habeas claims. *See State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169; *State v. Ishmail*, 67 Ohio St.2d 16. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that the procedural rule of *res judicata* does not rely on or otherwise implicate federal law. Therefore, Petitioner has waived claims four through eight for federal habeas corpus review.

Petitioner may still obtain review of these claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). Petitioner has failed to meet this standard here. Nothing in the record indicates that any external factor impeded Petitioner's ability to file a

direct appeal regarding ineffective assistance of counsel or matters related to the indictment. The fact that *res judicata* now bars his claims, therefore, is attributable only to him.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589 (6th Cir. 2005) (footnote omitted). Petitioner does not assert actual innocence, and the record fails to reflect these circumstances here.

Because he has failed to establish cause and prejudice for his procedural default, Petitioner has waived claims four through eight for federal habeas corpus review.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they

may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge